(19 Misc. Rep. 244.)

In re JENNEY.

(Supreme Court, Special Term, Onondaga County. January, 1897.)

1. LIQUOR TAX CERTIFICATE—ASSIGNMENT—RIGHT TO SURRENDER MONEY.
    An assignment as collateral security of all rights in a liquor tax certificate and all moneys to be refunded on surrender thereof is valid, and entitles the assignee to surrender the certificate and receive the surrender money,—Laws 1896, c. 112 (Liquor Tax Law) § 25, providing that the holder of a certificate

may surrender or assign it; that the assignee may thereupon carry on the business; and that, if a receiver or assignee for a certificate holder is appointed, he may surrender the certificate or carry on the business.

2. SAME—NECESSITY OF FILING ASSIGNMENT.

An assignment of a liquor tax certificate as collateral security is not governed by Laws 1833, c. 279, § 1, which provides that every mortgage "of goods and chattels" which is not followed by change of possession of the "things" mortgaged shall be void unless it is filed.

Application by Alexander D. Jenney, as receiver of Julius Lenz, a judgment debtor, for a peremptory mandamus to the treasurer of Onondaga county, directing him to cancel a liquor tax certificate issued to said Lenz, and to pay to said Jenney, as said receiver, the pro rata amount of the paid tax for the unexpired portion of the term of the certificate. Denied.

Thomas F. Murphy, for applicant.

S. B. Mead, Horace White, and J. L. Cheney, opposed.

HISCOCK, J. On or about May 5, 1896, a judgment was recovered against Julius Lenz, and thereafter, and on or about September 12, 1896, in supplementary proceedings instituted upon said judgment, Alexander D. Jenney was appointed receiver of the property of said judgment debtor. July 1, 1896, a liquor tax certificate in the ordinary form was issued to the judgment debtor, which has ever since continued in full force and effect. September 18, 1896, the receiver obtained possession of said certificate (it being disputed whether by the voluntary act of the debtor or not), and thereafter, and before this application, in proper form made application to the county treasurer to surrender said certificate, and receive the unexpired pro rata amount thereof, which application was refused. Several reasons were urged upon the motion why the application for the writ of mandamus asked for should be denied, but inasmuch as one of them seems more important than the others, and to be decisive of the application, consideration will be limited to that. The reason and defense referred to is that arising from and connected with the instruments executed by the judgment debtor to the Bartels Brewing Company and its president, relating to the liquor tax certificate in question, before the petitioning receiver was appointed or acquired any rights therein. At the time such certificate was taken out, the Bartels Brewing Company advanced to the judgment debtor the sum of $208.33, for the purpose of enabling him in part to pay the tax on the business of trafficking in liquor, and to take out the certificate in question, and Lenz executed and delivered to said company his promissory note for said amount. At the same time, said Lenz executed two instruments, one of them running to said Bartels Brewing Company, and the other to the president of said company and his successors. These instruments are quite full and in detail, and, in substance, by them Lenz assigned, transferred, and set over to said company, its successors and assigns, all his right, title, and interest in and to the liquor tax certificate in question, and all moneys to be refunded upon the surrender thereof, as collateral security for the payment of the above promissory note, and any and all renewals

thereof, and also as security for the payment of all beer, etc., which he might purchase on credit from said company, and generally for any other evidences of debt or balances of account or other indebt-edness which should at any time be due and owing said company from him, and also appointed the president of said company his attorney irrevocable, to sell, assign, transfer, and set over to any person, persons, or corporation he might choose all his right, title, and interest in and to said liquor tax certificate, and his attorney to surrender at any time the said certificate to the said county treasurer, and receipt for the pro rata amount of the tax paid, to be refunded for the unexpired term thereof, and to discontinue and cease the traffic in liquors under said certificate, and for that pur-pose to close up the premises where the business was to be car-ried on, and to apply all moneys refunded in payment of the above-mentioned note and indebtedness; express power being given to enter upon the premises where said certificate might be held or placed, and to take and carry away and deliver or otherwise dispose, of the same, to carry out the purpose of said attorneyship. These instruments were never placed on file as a chattel mortgage, and no act had been done under them with reference to surrendering said certificate, and securing a repayment thereunder from the county treasurer. Notice of them, however, had been duly given to the county treasurer before the application of the receiver for sur-render, and it was undisputed that at that time the indebtedness intended to be secured by them was in excess of the amount due by way of repayment.

It is urged in behalf of the receiver that these instruments are not effective to keep the rights of Lenz under the certificate away from him for the reasons—First, that the certificate and rights thereunder were subject to transfer and assignment such as was attempted; and, second, that, if they were, the instruments in ques-tion amounted to a chattel mortgage, and were void by reason of failure to file, etc. The conclusions reached are adverse to the re-ceiver, and in favor of the assignee and transferee of Lenz, upon both of these questions. There probably is no question that or-dinarily, and under the excise law as it formerly stood, the pay-ment of a license fee for transacting the liquor business would se-cure to the one paying it a personal right and privilege to trans-act such business, which would not be subject to transfer and as-signment, such as is claimed by the brewing company here. The liquor tax law, however, was evidently intended to change this, and to give a certificate issued under it, and the rights of surrender and repayment under such certificate, the status of property invested with the qualities of being assigned, transferred, and disposed of. By section 25, c. 112, Laws 1896, it is provided that the person hold-ing such certificate may surrender it, and have refunded the pro rata amount of the tax paid for the unexpired term. By section 27 it is provided that a person to whom such certificate is issued may sell, assign, and transfer it, and that the assignee may there-upon carry on the business for which such certificate was issued. By another clause of section 25 it is provided that if a corporation,

association, or co-partnership holding a liquor tax certificate shall be dissolved, or a receiver or assignee be appointed therefor, or a receiver or assignee of the property of a person holding a liquor tax certificate be appointed during the time for which such certificate was granted, or a person holding a liquor tax certificate shall die during the time for which such tax certificate was given, such corporation, association, co-partnership, or receiver, or assignee, or the administrator or executor of the estate of such person, or the person or persons who may succeed to such business, may surrender such liquor tax certificate, or continue to carry on the business thereunder. Under these provisions there would not seem to be any doubt that there had been conferred upon and attached to a certificate the quality and power of being transferred and assigned, as was done in this case. In fact, one of the provisions above quoted would seem to specifically authorize what has been done in this case, for in that clause, conferring rights upon "a receiver or assignee of the person holding a liquor tax certificate * * * appointed during the time for which such certificate was granted," it would be a narrow construction, especially in view of the broad and general provisions of the statute, to hold that the word "appointed" referred exclusively to a receiver or assignee named in proceedings hostile to the owner of the certificate, and did not as well apply to an assignee appointed by the holder himself, as in this case. It was intended by the parties to make the instruments under consideration irrevocable. They were executed and delivered for value, and very likely are so; but that question is not presented here, for the assignor has expressly appeared on this application, and by his affidavit not only has not repudiated the transfers, but has recognized and ratified them.

I pass to the second question above suggested, whether these instruments should have been filed as a chattel mortgage to make them effective as against the receiver. The receiver simply took and has the rights left to Lenz at the time the receivership was created. No question is presented such as would arise between the Bartels Brewing Company and a subsequent bona fide transferee of Lenz for value, and without notice of the prior assignment. The only contention is that these transfers amounted to a chattel mortgage, and that, therefore, they are void, under the express statutory provisions relating to the filing of chattel mortgages. It is quite clear, however, both from the reading of the statute itself, and from the authorities relating to similar statutes, that it does not apply here, and that it was not necessary to file the assignment and power of attorney.

The statute invoked reads as follows:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void," etc. Laws 1833, c. 279, § 1.

It is obvious that this act is not intended to apply to mortgages upon all species of personal property, but that the terms used, "goods and chattels," and "things," include and refer only to per-

sonal property which is visible, tangible, and movable, and not to mere choses in action. This contention is amply sustained by the following authorities, relating to the meaning of the same and similar statutes and words: Williamson v. Railroad Co., 26 N. J. Eq. 403; Bacon v. Bonham, 27 N. J. Eq. 209; Kilbourne v. Fay, 29 Ohio St. 264; Marsh v. Woodbury, 1 Metc. (Mass.) 436; Kirkland v. Brune, 31 Grat. 126, 131; Manufacturing Co. v. Hoffman, 3 Daly, 495, 513; Putnam v. Westcott, 19 Johns, 73. It has even been held that the filing or refiling of a chattel mortgage is not necessary to secure its validity as against a receiver in supplementary proceedings. Steward v. Cole, 43 Hun, 164. In accordance with the foregoing views and conclusions, the application for a peremptory writ of mandamus is denied, with $10 costs.

Application denied, with $10 costs.

